## Paul A. Steele v. John C. Eaton et al.

[285 A.2d 749]

No. 117-70

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed December 7, 1971

*Gerard F. Trudeau,* Middlebury, for Plaintiff.

*Wilson, Curtis, Bryan, Quinn & Jenkins,* Burlington, for Defendants.

**Barney, J.** The plaintiff lost the fingers of his right hand in an industrial accident. He has received a workmen's compensation award through the insurance carrier, Employers Mutual Liability Insurance Company of Wisconsin, of his employer, Otter Creek Corporation. In this action seeking recovery in a civil action sounding in negligence, the plaintiff has joined both his employer and the insurance carrier, and, additionally, John Eaton, president and principal stockholder of the Otter Creek Corporation, Eaton Lumber Company, another corporation principally owned by John Eaton and insured by Employers Mutual, and one David Barry, the immediate supervisor of the plaintiff at his work.

Two of these parties have been discharged from the litigation without contest here. Otter Creek Corporation, the corporate employer of the plaintiff, was excused since, in view of the exclusiveness of the workmen's compensation award the plaintiff sought no other recovery directly against it. As to David Barry, the plaintiff entered the cause discontinued.

Under the workmen's compensation law of Vermont, an injured employee has the right to pursue his remedy against any person other than his employer who was so related to the

cause of his injury that a legal liability for his damage arose. 21 V.S.A. § 624; *Herbert* v. *Layman and Braun,* 125 Vt. 481, 486, 218 A.2d 706 (1966). His action against the remaining defendants was brought under the authority of this section. The trial court ordered that verdicts be directed in favor of each of the remaining defendants. It is from this decision that the plaintiff appeals.

■ The basis for charging each of these defendants with responsibility for the plaintiff's injury is different, so that each must be separately considered. Dealing first with the Eaton Lumber Company, the plaintiff seems to be saying that since it is another corporation of which John Eaton owns the bulk of the stock and which is insured by Employers Mutual, it must bear some responsibility for the conditions under which the plaintiff worked, and for his injury. But if it did stand in a position of responsibility of this kind, it must be as the plaintiff's true employer and thereby come under the provisions of the workmen's compensation act that provides that that act shall be the exclusive remedy against a covered employer. *Quinn* v. *Pate,* 124 Vt. 121, 124, 197 A.2d 795 (1964). If it does not stand in that relationship to the plaintiff, as the facts seem to indicate it does not, it has no responsible relationship to this litigation, the happenstance that it is owned by John Eaton contributing nothing by way of relevancy to this dispute. Therefore, a verdict in its favor was properly directed.

■■ Since the Employers Mutual Liability Insurance Company ordinarily stands in the shoes of the employer, *Morrisseau* v. *Legac,* 123 Vt. 70, 76, 181 A.2d 53 (1962), there would ordinarily be no separate remedy here, either. But the plaintiff urges a duty on the part of the insurer to inspect the place of employment for safety, and a breach of that duty justifying recovery by the plaintiff. There is a provision in the policy reserving the right in the insurer to make an inspection. There is no evidence that this was the practice with this company, or that the plaintiff, in any way, knew, relied, or expected such inspections on the part of the insurer. There is nothing in the case to raise, as a matter of law, a duty to make a safety inspection on the part of the insurer, nor is there

evidence that any such inspection was in fact undertaken and negligently performed, or amounting to a holding out to this plaintiff that he could rely on any such inspections. The record, in no fashion, supports the plaintiff's claim in this particular, and the direction of a verdict was required.

The plaintiff also makes a claim against John Eaton, the principal owner and president of the two corporations, Otter Creek Corporation and Eaton Lumber Corporation. Obviously, recovery cannot be had against him as employer, since he would be entitled to all the statutory defenses of an employer, already mentioned. Thus the suit against him must be based on some liability as a co-employee. *Herbert* v. *Layman and Braun, supra,* 125 Vt. at 484.

This being so, the acts of negligence for which he can be held responsible are not those such as a master or employer are liable for under the doctrine of respondeat superior, but must be acts constituting direct negligence toward this plaintiff. The defendant, John Eaton, can be held personally liable for only those tortious or negligent acts against the plaintiff in which he participated or cooperated, or specifically directed others to do. *Parker* v. *Cone,* 104 Vt. 421, 425, 160 A. 246 (1932).

The accident, described in terms of the evidence most strongly favoring the plaintiff, happened in this manner. The plaintiff was working feeding wood slabs into a large machine that converted the slabs into wood chips. The machine was so large that it, in effect, was a two-story operation. It was electrically operated, the motor being of about one hundred fifty horsepower. The gear machinery was governed by two sets of controls, one upstairs where the wood slabs were fed in, and one downstairs on the wall beside the machine on the side opposite the stairway. To reach these controls, it was necessary to come down the stairs and go around to the other side of the unit. The gears that did the harm were on the machine adjacent to the foot of the stairs and were exposed. A safety cover for them was not in place at the time of the accident. John Eaton knew of the practice of leaving these gears uncovered.

It was a frequent occurrence for the chipping machinery to jam due to pieces of wood getting wedged between the gears and certain openings in which they were located. It often happened several times an hour. The practice was to cut off the power to the gears and remove the jam with a stick or a pole, by pushing the wedged wood away.

At the time of the accident, the plaintiff was an employee that fed the slabs into the chipper. He had worked there just six days. His position was upstairs on the floor above the gears. His foreman was in position at the machine where the shut-off control was. The machine plugged and the plaintiff went down to unplug it. The foreman said he was shutting down the machine, but the gears would turn for a little while after the button was pushed.

The plaintiff came down the stairs and was going around the machine to turn the other switch off, since the gears were still turning. Somehow he slipped or fell and his sleeve caught in the moving gears and pulled his fingers into them.

John Eaton was not on the premises. Indeed he came to the operation infrequently, perhaps two or three times a year. He had a manager in charge of, and responsible for, the operation of that particular mill. The person immediately in charge of the plaintiff was the foreman, who directed him to unplug the machine and indicated he would stop the gears. He testified it was policy not to go down to the vicinity of the gears to unplug the chipper without shutting down the machine.

The question presented to the trial court was, what was the specific negligent act of John Eaton with respect to the events of the accident which amounted to negligence by him personally, as contrasted with any shortcomings as to working conditions for which the corporate employer must be held responsible. It is important to maintain the distinction between personal liability and employer liability, since to merge them would, on the one hand, yield a double recovery against the employer in the area intended to be covered for him by the workmen's compensation law, and, on the other hand, reintroduce into such recovery the issues of contributory negligence, fellow servant rule and assumption of risk now outside the workmen's compensation law.

The only issue upon which any question of a negligent act on the part of John Eaton himself derives from his conceded actual knowledge of the practice of running the chipper with the safety cover off. This was not at his direction, but he knew of it. In view of his relation to the employing corporation, and also to the manager of the particular mill, was this enough to raise a jury question of his negligent responsibility. If it were not for his established close identity with the corporation itself, owning almost one hundred per cent of its stock, we would be inclined to say that the jury should determine whether he should be held as a negligent fellow servant. But his ownership raises the same policy question dealt with in *Miller* v. *Muscarelle*, 67 N.J. Super. 305, 170 A.2d 437, 453 (1961). To quote from that opinion:

> It is no answer to say that Muscarelle [here Eaton] was, to all intents and purposes, the dominant director of the corporation, because this leads to the wrong of indirectly saddling the corporation with a liability to an employee incompatible with its obligation to him under the compensation act. Moreover, it would impose an individual liability upon Muscarelle which he was legally entitled to avoid by organizing his business, along with his associates, as a corporate entity. In other words, a neglect as to safety precautions by the corporation, through the absence of appropriate affirmative action by its officers and directors, while subjecting it to such tort or compensation liability as the law declares, does not equate with a default of personal duty to the corporation by such agents which gives rise to individual liability to other employees.

This, we hold, is the situation here. The relationship of John Eaton to any imputations of negligence, lacks the immediacy of participation that justifies recovery against him as a fellow servant. The presence of other, intermediate, responsible supervisors on the scene insulates him from participatory liability. On the facts in evidence, a proceeding against him would be in derogation of the policy of the workmen's compensation law.

The appeal also raises and the defendants strongly urge the assumption of risk on the part of the plaintiff as a bar to his recovery. Admittedly the supporting facts are very strong, but our disposition of the case makes it unnecessary to treat that issue.

*Judgment affirmed.*